NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 10

No. 22-AP-122

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Jeffrey H. Young | January Term, 2023 |

Thomas Carlson, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Defendant Jeffrey Young appeals a decision denying his motion to dismiss for lack of a speedy trial. We affirm.

## I. Background

¶ 2. On August 19, 2018, following a series of unfortunate events, defendant fired multiple nine-millimeter rounds from inside his home toward the front door. Defendant's adult son, and his son's two friends were standing on the porch. His son was struck by one bullet, but the wound was not life-threatening.

¶ 3. Defendant was arrested soon afterward and arraigned on August 20, 2018. He pleaded not guilty to charges including attempted second-degree murder, attempted voluntary

manslaughter, aggravated domestic assault with a deadly weapon, and reckless endangerment. Following a weight-of-the-evidence hearing, the court granted the State's motion to hold defendant without bail pending trial.

¶ 4.    Defense counsel filed a motion to withdraw on October 25, 2018, and the court appointed new counsel on November 5, 2018.  On December 2, 2018, defendant moved for an outpatient competency evaluation, which the court granted.  A report indicating defendant was competent to stand trial was docketed on January 11, 2019.  At a status conference on February 4, 2019, defense counsel represented that defendant was seeking an independent opinion on the issue of competency.  The parties filed a joint discovery order representing that they would be trial ready on July 1, 2019.  Before proceeding to trial by that date, however, defendant filed a motion to dismiss in May 2019, and the same month filed a motion in limine seeking to admit evidence of his son's prior bad acts.  In turn, the State filed a July 2019 motion in limine regarding a prior shooting involving defendant.  On November 4, 2019, the State moved to continue the trial to March 2020 to accommodate a witness, and defendant did not object.  At a hearing on March 19, 2020, defense counsel expressed surprise that defendant's competency was still unresolved.  Nonetheless, at the same hearing, defendant stipulated that he was competent and agreed to proceed to trial on May 27.

¶ 5.    On March 16, 2020, in response to the COVID-19 pandemic, this Court issued Administrative Order 49 (A.O. 49), which among other things paused all jury trials.  A.O. 49(3) (as amended 8/20/2020) [https://perma.cc/HNS6-N234].  On April 22, 2020, defendant requested a speedy trial for the first time.  On June 17, 2020, defendant filed a pro se letter informing the trial court that he was unhappy with his current counsel and alleging that the attorney who represented him at arraignment had waived his speedy-trial right without his

2

consent. On June 30, 2020, defendant, through counsel, filed an omnibus motion again asserting a violation of his speedy-trial right and seeking an immediate trial.

¶ 6. The court denied the motion on August 25, 2020.[1] It first determined that the delay was sufficient to trigger a balancing of the factors set out in Barker v. Wingo, 407 U.S. 514 (1972). It then tallied up the reasons for the delay attributable to each party, including the jury-trial pause mandated by A.O. 49, which it applied against the State, but weighed the delay attributable to competency and defendant's other pretrial motions against defendant, and found that the second factor did not substantially favor him. The court found that defendant did not aggressively assert his right to a speedy trial because he raised it for the first time on April 22, 2020, twenty months after arraignment and more than a month after A.O. 49 took effect. Finally, the court found that defendant's claims of pretrial confinement generally as "torture[]," did not constitute "actual prejudice to or impairment of his defense."

¶ 7. Ultimately, the case proceeded to trial on November 1, 2021, approximately thirty-eight months and two weeks after his arrest, and fourteen months after the order denying his omnibus motion for a speedy trial. The jury returned guilty verdicts on attempted voluntary manslaughter, aggravated assault, and two counts of reckless endangerment.[2] Following sentencing in April 2022, defendant appealed seeking to overturn his convictions because the State had violated his speedy-trial right as guaranteed under the U.S. and Vermont Constitutions. Defendant reiterates many of the same arguments made below but now also contends that the delay resulted in presumptive nonparticularized prejudice under Doggett v. United States, 505 U.S. 647 (1992), and asks this Court to adopt a per se rule that a thirty-

---

[1] The court later denied defendant's motion to take an interlocutory appeal from this order.

[2] Following trial, the State moved to dismiss without prejudice the attempted voluntary manslaughter charge, which the court granted.

3

eight-month, two-week delay presumptively prejudiced his defense under the fourth <u>Barker</u> factor. The State counters that this argument is not preserved, but that even if it is defendant has not alleged official negligence or bad acts by the State in bringing him to trial, and his argument therefore fails under <u>Doggett</u> and its progeny.

## II. Speedy-Trial Claim

¶ 8.     The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI; see <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223 (1967) (applying speedy-trial right to states through Due Process Clause of Fourteenth Amendment).

¶ 9.     We evaluate speedy-trial claims using the four-part balancing test set out in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972). See <u>State v. Reynolds</u>, 2014 VT 16, ¶ 8, 196 Vt. 113, 95 A.3d 973 (citing <u>Barker</u>). The factors we weigh include "the length of the delay, the reason for the delay, the extent to which defendant asserted his speedy-trial right, and any prejudice to the defendant caused by the delay." <u>Id</u>. No single factor has any "talismanic qualities." <u>Barker</u>, 407 U.S. at 533. Instead, these factors are to be considered " 'with such other circumstances as may be relevant' " to "the specific context of the case at hand." <u>State v. Lafaso</u>, 2021 VT 4, ¶ 11, 214 Vt. 123, 251 A.3d 935 (quoting <u>Barker</u>, 407 U.S. at 533). Finally, "[a]s the trial court is in the best position to determine the weight and sufficiency of the evidence, we use a clearly erroneous standard to review underlying facts found by the court." <u>State v. Burke</u>, 2012 VT 50, ¶ 14, 192 Vt. 99, 54 A.3d 500. We review without deference the legal question of whether the record below and the facts found constitute a violation of defendant's speedy-trial right. <u>Id</u>.

## A. Length of Delay

¶ 10.    We begin with the length of the delay between defendant's arrest on August 19, 2018, and the trial which began on November 1, 2021—a total of 1170 days, or approximately thirty-eight months and two weeks. The first Barker factor "serves a dual role." State v. Vargas, 2009 VT 31, ¶ 12, 185 Vt. 629, 971 A.2d 665 (mem.) (quotation omitted). As a threshold matter, the delay must be long enough "to trigger review of the other factors." Burke, 2012 VT 50, ¶ 15; see also Barker, 407 U.S. at 530-31 (describing first factor as "triggering mechanism" because "[u]ntil there is some delay which is presumptively prejudicial," there is no need to proceed further). Second, if "triggered, the first factor then is balanced along with the other factors in determining whether a speedy-trial violation exists." Vargas, 2009 VT 31, ¶ 12 (quotation omitted).

¶ 11.    The State concedes that the delay is long enough to warrant balancing the remaining factors, though it contends that the time elapsed to determine competency and defendant's other pretrial motions are not counted in the total delay. We agree with the State's contention. See State v. Williams, 143 Vt. 396, 401, 467 A.2d 667, 669-70 (1983) ("[D]elay occasioned by the need to determine competency to stand trial is excluded from consideration. . . .  Also excluded are the delays accompanying pretrial motions and those resulting from defense-requested continuances."). The trial court found that 473 days were attributable to defendant's competency evaluation and related discovery, and eighty-one days for "[d]efendant-initiated[-]motion delay." See State v. Yudichak, 151 Vt. 400, 405, 561 A.2d 407, 410 (1989) ("Excluded from the computation of time . . . are delays attributable to pretrial motions made by the defense."). Accordingly, the length of the delay is 616 days, or approximately twenty months and two weeks. Given that the charges against defendant included complex felony charges, we conclude that a twenty-month, two-week delay is not

5

"extreme in relation to . . . the nature of the case," and does not weigh heavily in defendant's favor. Vargas, 2009 VT 31, ¶ 13.

### B. Reasons for Delay

¶ 12. When weighing the reasons for the delay under the second factor, we assign "different weights" to "different reasons." Barker, 407 U.S. at 531. For example, deliberate attempts by the government to delay trial weigh heavily against it. Id. We weigh more neutral issues such as overcrowded courts less heavily, but they remain important considerations because "the ultimate responsibility for such circumstances must rest with the government." Id. Delays caused by the defendant or defense counsel are attributable to the accused. Vermont v. Brillon, 556 U.S. 81, 90-91 (2009). However, delays due to missing witnesses and ordinary trial preparation are valid reasons to "justify a delay." Lafaso, 2021 VT 4, ¶¶ 14, 24 (holding that pretrial delays attributable to stipulated discovery motions and trial-ready scheduling "designed to accommodate the ordinary needs of trial preparation" do not significantly favor defendant). Delays resulting from logistical challenges presented by the COVID-19 pandemic are attributable to the State and, while "cause for concern," represent "a highly unusual situation when compared to prolonged [delays] outside of the context of a global pandemic." State v. Labrecque, 2022 VT 6, ¶ 27, __ Vt. __, 273 A.3d 642 (mem.); see also State v. Labrecque, 2020 VT 81, ¶ 28, 213 Vt. 635, 249 A.3d 671 (mem.) (explaining that portion of delay attributable to COVID-19 logistical challenges "is not the result of [the State's] malfeasance or neglect").

¶ 13. This is not a case where either party engaged in vexatious litigation. See, e.g., Burke, 2012 VT 50, ¶ 16 (describing "multitude of motions, including motions to recuse three different judges, a motion to disqualify a prosecutor, and motions for sanctions" primarily responsible for five-year delay). While defendant and the State characterize each pretrial

6

motion and accompanying response times from the trial court as "delays," this characterization overstates most of what are, as defendant does not dispute, ordinary pretrial proceedings. As the U.S. Supreme Court explained in Doggett, the "Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." 505 U.S. at 651; see Reynolds, 2014 VT 16, ¶ 21 (concluding that twelve months from arrest to trial falls "within normal limits for trial preparation"). To take one example from the briefing in this case, defendant characterizes the State's July 2019 motion in limine and the court's subsequent decision on the motion as a twenty-nine-day delay. However, this motion occurred well "within the normal limits for trial preparation." Reynolds, 2014 VT 16, ¶ 21 (twelve months); see also State v. Turner, 2013 VT 26, ¶ 9, 193 Vt. 474, 70 A.3d 1027 (explaining that eighteen months between arraignment and trial did not weigh in defendant's favor because "rules of criminal procedure contemplate several months of discovery" and distinguishing between delays in commencement of proceedings versus delays in completion of pretrial hearings and discovery process).

¶ 14. These observations aside, we conclude that the only cause for delay weighing in defendant's favor before this Court issued A.O. 49 on March 16, 2020, is the State's November 4, 2019, motion to continue. However, we accord it little weight. "Valid reasons for delay, such as missing witnesses, justify a delay." Lafaso, 2021 VT 4, ¶ 14 (citing Barker, 407 U.S. at 531). Moreover, with respect to asserting the right under the third factor below, defendant's acquiescence to the continuance significantly reduces the weight attributable to the State. Id. ¶ 26 (explaining that "failure to object to motions for continuances" is one of several facts courts can consider in evaluating violation of speedy-trial right).

¶ 15. On the other hand, prior to A.O. 49, the only event weighing against defendant is the November 5, 2018, withdrawal of his first attorney. Attorney withdrawals are

7

attributable to defendant, Brillon, 556 U.S. at 90-91, but as the withdrawal of defendant's initial counsel and subsequent appointment of replacement counsel occurred early in the proceedings, and no other attorney withdrawal occurred before the issuance of A.O. 49, we weigh it only lightly. Cf. Lafaso, 2021 VT 4, ¶ 15 (holding that withdrawal of three attorneys in less than three months weighed against defendant).

¶ 16. The period between the issuance of A.O. 49 in March 2020 and trial in November 2021 is, however, entirely attributable to the State. See Labrecque, 2020 VT 81, ¶ 26. For this reason, we give no weight to any other action alleged to have caused a delay following March 16, 2020, because there was essentially nothing either party could have done to affect the trial schedule following that date. Notably, defendant does not suggest that either the State or the trial court were indifferent in scheduling the jury trial. Defendant's case was first up following Addison County's resumption of jury trials in November 2021, and the trial court took pains to keep proceedings on track for that date. For example, the court issued an August 24, 2021, entry order explaining that the "case is first on the jury trial list and the court is anticipating approval of its jury trial plan by the Chief Administrative Judge soon such that trial can proceed in November." The court noted that it "believes this timeline addresses defendant's motion for speedy trial, while noting that further delay may occur due to deterioration in the Covid [pan]demic picture."

¶ 17. Defendant cites cases from other jurisdictions suggesting his trial could have occurred earlier despite the existence of the pandemic. While theoretically true that a trial could have been held before November 2021, as this Court held in Labrecque, the delay in bringing defendants to trial during the pandemic was an extraordinary moment in modern history that presented unprecedented "logistical challenges" that were neither intentional nor unwarranted, and ultimately the pandemic represents a "more neutral" reason under Barker's

8

second factor. 2020 VT 81, ¶ 28 (quotation omitted). We rely on Labrecque and conclude that while the COVID-19 delay is entirely attributable to the State, it does not heavily favor defendant. On balance, given that prior to the onset of the pandemic both parties had engaged in ordinary trial preparation and motion practice appropriate in a felony case and that A.O. 49 does not weigh heavily against the State, we conclude that the second factor does not favor either party.

### C. Extent to Which Defendant Asserted the Right

¶ 18. The third factor concerns the extent to which defendant asserted his right to a speedy trial. A "defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the [speedy trial] right." Barker, 407 U.S. at 528. Aspects we consider when weighing this factor include defendant's knowing failure to object to delays, acquiescence in long delays, failure to object to motions to continue, and the " 'frequency and force' " of the accused's speedy-trial objections. Lafaso, 2021 VT 4, ¶ 26 (quoting Barker, 407 U.S. at 529). A delay in asserting the right to a speedy trial weighs against the accused. See State v. Recor, 150 Vt. 40, 43, 549 A.2d 1382, 1385 (1988) (holding that delay of twelve months without objection weighed against defendant); Turner, 2013 VT 26, ¶ 11 (same); see also Barker, 407 U.S. at 532 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").

¶ 19. The trial court found that defendant first asserted his speedy-trial right on April 22, 2020, twenty months after his arrest, and approximately one month after pandemic-related logistical directives first went into effect. This delay in asserting the right is significant both in terms of our case law, see Recor, 150 Vt. at 43, 549 A.2d at 1385, and because defendant first raised the issue after A.O. 49 had paused all jury trials and the Department of Corrections

9

(DOC) had instituted protective pandemic-related measures in Vermont's correctional facilities.

¶ 20.    The trial court was left with few options to grant defendant's request even if it had determined defendant was entitled to a speedy trial.  Though defendant left no doubt about his wish for a speedy trial once he asserted the right, this was far outweighed by the time it took him to raise it in the first instance and because he first asserted it during a period in which no trials were being conducted.  This, combined with defendant's acquiescence to the State's motion to continue outlined above, means the third factor heavily favors the State.

## D.  Prejudice to Defendant

¶ 21.    Finally, we turn to defendant's argument that the twenty-month, two-week delay caused him presumptive, nonparticularized prejudice under the fourth Barker factor.  See Doggett, 505 U.S. at 656.  In the alternative, defendant renews his argument that the DOC restrictions related to COVID-19 actually prejudiced his defense because the restrictions prevented in-person attorney-client consultation, required lengthy pre-hearing quarantines, and took a toll on his mental and physical ability to prepare for and defend his case.

¶ 22.    The State counters that he did not preserve the presumptive-nonparticularized-prejudice argument, but that even if he had, defendant has not alleged the State took any bad-faith or negligent actions resulting in delay.  Without such actions, the State contends that defendant cannot prevail under Doggett.  The State also argues that defendant has not demonstrated any actual prejudice because the COVID-19 restrictions did not only apply to defendant but to all persons incarcerated in Vermont, and his trial defense was not actually impaired due to the time elapsed.

¶ 23.    As a threshold matter, we hold that defendant's argument is preserved and appropriate for appellate review.  The trial court made findings and conclusions regarding

10

defendant's speedy-trial claim in its written order dated August 25, 2020. Fourteen months later, on November 1, 2021, the case went to trial. The total delay between arrest and trial thus increased by approximately three-quarters. Prejudice generally tends to increase with time. Doggett, 505 U.S. at 652 ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time."). Furthermore, because defendant invoked the Sixth Amendment in this case, he is correct that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." Yee v. City of Escondido, 503 U.S. 519, 534 (1992) (explaining that physical and regulatory takings "are not separate claims. They are, rather, separate arguments in support of a single claim—that [municipal rent-control] ordinance effects an unconstitutional taking"). Defendant unquestionably raised a federal speedy-trial claim below, and he can now make the argument on appeal that he suffered presumptive, generalized prejudice, in addition to renewing his actual-prejudice argument on appeal.

¶ 24. "[P]rejudice most often is manifest in three forms: lengthy pretrial incarceration, the personal anxiety wrought upon defendant, and the impact of the delay upon defendant's ability to prepare an adequate defense." Yudichak, 151 Vt. at 405, 561 A.2d at 411 (citing Barker, 407 U.S. at 532). Of these, the most important consideration is the last. Lafaso, 2021 VT 4, ¶ 33. Demonstrating actual prejudice is not necessary to prevail under this factor because " 'excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.' " Id. (quoting Doggett, 505 U.S. at 655). Accordingly, bad-faith delays by the government present "overwhelming" justifications for dismissal, while "official negligence" that is "neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted," generally entitles the accused to relief. Doggett, 505 U.S. at 658 (citation omitted). However, if the government prosecutes the case "with

11

reasonable diligence," a speedy-trial claim "generally" fails "as a matter of course however great the delay . . . so long as [defendant] c[an] not show specific prejudice to his defense." Id. at 656.

¶ 25.   We begin with the question of whether defendant suffered actual prejudice because this determination helps resolve his generalized-prejudice argument.  With respect to whether he suffered either oppressive pretrial detention or inordinate anxiety and concern, the trial court concluded that defendant's claims of pretrial detention as "torture," that he "lost his worldly goods and home," suffered separation from family and friends, was forced to surrender his pets, and that the COVID-19 related restrictions affected his mental health, identified no actual prejudice to or impairment of his defense which has resulted from the delay.  We see no reason to disturb the trial court's conclusion.  However, we do acknowledge that "time spent in jail awaiting trial has a detrimental impact on the individual," and is ultimately "simply dead time."  Barker, 407 U.S. at 533.  While defendant has shown no actual impairment to his defense, the detrimental impacts of pretrial detention on his life are real.

¶ 26.   We now turn to defendant's primary argument on appeal under the fourth factor—that he suffered presumptive, generalized prejudice due to the length of time from arrest to trial.  Crucially, defendant does not argue that the State did not prosecute his case with "reasonable diligence."  Nor does the record reveal otherwise.  Instead, defendant places great weight on the fact that the pandemic exacerbated the length of his pretrial detention to "39 months" in total.  As we concluded above, however, the length of delay we consider in this case is twenty months and two weeks.  See supra, ¶ 11.  Moreover, COVID-19 restrictions were neither imposed in bad faith, nor were they a result of official negligence.  Thus, even if this Court held that his defense was presumptively prejudiced in a generalized manner, which we do not, defendant could not prevail under the framework set forth under Doggett.  505 U.S.

at 656 (explaining that even eight-year, six-month delay, if accompanied by reasonable diligence in prosecuting the accused, would mean "speedy trial claim would fail").

¶ 27.    The cases defendant cites in support of his position are not to the contrary.  In Kennedy v. Superintendent Dallas SCI, 50 F.4th 377 (3d Cir. 2022), the Court of Appeals for the Third Circuit found generalized prejudice following a fifty-month delay, where the defendant demonstrated prejudice "stemming from loss of employment, anxiety, and incarceration."  Id. at 386.  Furthermore, the government had filed "a flurry" of continuances due "entirely to court congestion," and twice sought and obtained continuances because it "failed to secure the attendance of a prosecution witness in state custody."  Id. at 380 (emphasis added); see also Barker, 407 U.S. at 516 (explaining that prosecuting authority sought and obtained sixteen continuances).  In United States v. Battis, 589 F.3d 673 (3d Cir. 2009), the Third Circuit found presumptive generalized prejudice following a forty-five-month delay, where the federal prosecuting authority intentionally did not bring the accused to trial while a state case proceeded first, and failed to notify the federal court of that decision.  These cases bear little resemblance to the present matter.  In both Kennedy and Battis, the government delayed bringing the accused to trial for, at best, officially negligent reasons, and, at worst, intentionally strategic advantages.  Moreover, in both cases the delay was significantly longer than the twenty months and two weeks elapsed here.  The fourth factor does not favor defendant.

## III.  Conclusion

¶ 28.    On balance, only the first factor favors defendant, and not heavily, while the third factor heavily favors the State. The second and fourth factors favor neither party. While no factor has any talismanic qualities, we are persuaded that no speedy-trial violation occurred here principally because of defendant's twenty-month delay in first asserting the right, the

unavoidable delays caused by the COVID-19 pandemic, and defendant's failure to allege that the State prosecuted him with anything other than reasonable diligence. See <u>Barker</u>, 407 U.S. at 534-35 (reasoning that prejudice and "the fact that [defendant] did not want a speedy trial" outweighed "extraordinary" five-year delay). Accordingly, we affirm the trial court's decision.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice