NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 5

No. 23-AP-050

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Michael A. Armstrong | October Term, 2023 |

Katherine A. Hayes, J.

David W. Gartenstein, Windham County Deputy State's Attorney, Brattleboro, for
  Plaintiff-Appellant.

Sara Kagle, Vermont Legal Aid, Inc., Springfield, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Morrissey, Supr. J.,
         Specially Assigned

¶ 1.     **REIBER, C.J.**   The State of Vermont appeals the superior court's dismissal of charges against defendant Michael Armstrong on speedy-trial grounds. It has been more than nineteen years since the charges against defendant were first brought and more than fifteen years since defendant was adjudicated incompetent to stand trial. The trial court dismissed the charges, finding that the State had failed in its obligation to reevaluate defendant's competency, thereby violating defendant's constitutional right to a speedy trial. Because we conclude that the sole reason for delay—defendant's incompetency—is not attributable to the State, and because of the Legislature's mandate precluding a trial while incompetent under 13 V.S.A. § 4817(b), we reverse and remand.

## I. Facts and Procedural History

¶ 2.     The trial court made the following findings.  Defendant was initially charged on February 26, 2004, with four felonies—two counts of aggravated sexual assault under 13 V.S.A. § 3253(a)(8), one count of aggravated sexual assault under 13 V.S.A. § 3253(a)(9), and one count of lewd or lascivious conduct with a child under 13 V.S.A. § 2602.  The aggravated sexual assault charges carry a mandatory-minimum sentence of ten years and a maximum of life imprisonment. 13 V.S.A. § 3253(b).  With the charges pending, defendant was released to the custody of his mother after approximately two weeks in jail.

¶ 3.     Over the following three years, the case proceeded toward trial in a manner that the trial court described as "longer than ideal, [but] within normal parameters given the seriousness of the charges."   Initial proceedings centered on defendant's motion to suppress evidence of statements made to police, which was ultimately denied in February 2006.  Defendant then moved to extend the discovery period to conduct depositions of the complaining witness and a doctor.  In August 2006, defendant's first attorney moved to withdraw from the case.  The court subsequently granted two extensions until January 2007 to accommodate new defense counsel.  In February 2007, both parties agreed to continue the trial until May to complete depositions.  At no time was an issue regarding defendant's competency raised.

¶ 4.     In May 2007, as the parties were selecting a jury for the case, defense counsel for the first time moved the court for an evaluation of defendant's competency.  The court granted the motion and held competency hearings over the next several months.  On April 24, 2008, the court issued an order finding defendant incompetent to stand trial, concluding that due to "defects in the defendant's ability to understand abstract concepts and to engage in complex reasoning . . . he cannot consult with his lawyer with a reasonable degree of rational understanding."

2

¶ 5.     The court then scheduled commitment hearings, and in January 2009, issued an order finding by clear and convincing evidence that defendant had committed the charged offenses and was a danger to others.  Pursuant to 13 V.S.A. § 4823, the court placed defendant indefinitely in the custody of the Commissioner of Disabilities, Aging, and Independent Living (DAIL).  On appeal, this Court affirmed the commitment order over arguments that the trial court lacked jurisdiction and that there was insufficient evidence to find defendant posed a danger to others. See In re M.A., 2011 VT 9, 189 Vt. 354, 22 A.3d 410.

¶ 6.     Following this Court's denial of his appeal, defendant spent the next three years— from March 2011 to June 2014—in DAIL custody, with no action on his case.  Defendant's attorney passed away in November 2012, leaving defendant unrepresented.

¶ 7.     In June 2014, the court on its own motion scheduled a status conference, where it ordered briefing on whether the case should be dismissed.  The court appointed new counsel for defendant, and on the court's suggestion, defendant filed a motion to dismiss, arguing that there was no evidence that he was "not still currently and indefinitely incompetent" and noting that it had been more than ten years since his arraignment. The State filed an opposition, arguing that defendant's placement with DAIL was subject to annual review and might therefore come to an end, enabling the State to bring the case to trial.  After a hearing, at which defendant's psychotherapist testified that in DAIL custody defendant would still be receiving twenty-four-hour supervision for an indefinite period, the court ordered supplemental briefing.  However, for reasons not stated in the record, neither party filed any additional memoranda, and the court ultimately denied the motion to dismiss.

¶ 8.     There followed no action in the case for more than six years.  In November 2021, Vermont Legal Aid entered an appearance on behalf of defendant and filed a new motion to dismiss.  In the motion, defendant requested dismissal pursuant to Vermont Rule of Criminal

Procedure 48(b)(2), arguing that continued prosecution violated the Americans with Disabilities Act (ADA) and denied due process and equal protection rights recognized in Jackson v. Indiana, 406 U.S. 715 (1972). The court denied the motion without prejudice and ordered a new competency evaluation. The competency evaluation was completed in June 2022 and found that defendant was competent to stand trial. But the court concluded that the evaluation was legally insufficient because it was conducted by a psychologist rather than a psychiatrist, as mandated by the then-current version of 13 V.S.A. § 4814.[1] The court ordered the Department of Mental Health (DMH) to conduct an evaluation by a psychiatrist, but due to internal delays, no evaluation occurred. On August 22, 2022, defendant brought a third motion to dismiss, arguing that the delayed prosecution violated his constitutional right to a speedy trial.

¶ 9.     In its ruling on the third motion, the trial court recognized the test for speedy-trial claims as set out in Barker v. Wingo, 407 U.S. 514 (1972), which requires courts to balance four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. To trigger the four-factor test, a defendant must first show that the length of delay is sufficient to qualify as "presumptively prejudicial." Doggett v. United States, 505 U.S. 647, 651-52 (1992).

¶ 10.     Applying the Barker test, the court first found that the length of delay was "extraordinary, even egregious," and was more than sufficient to trigger the four-factor analysis. Next, the court found that although some periods of delay were neutral or attributable to defendant, there were at least ten years of delay that were solely the fault of the State. The State, it said, had an obligation to move the case toward trial by reevaluating defendant's competency and failed to do so. Third, the court found that defendant had sufficiently asserted his right to a speedy trial by

---

[1] Section 4814 was modified as of July 1, 2023, and now states that "[n]otwithstanding any other provision of law, an examination ordered pursuant to subsection (a) of this section may be conducted by a doctoral-level psychologist." This modification is set to expire on July 1, 2024.

filing motions to dismiss in 2014, 2021, and 2022. Finally, the court found that defendant had suffered actual prejudice from the death of counsel in 2012 and presumptive prejudice due to the extraordinary length of delay. Weighing the four factors, the court concluded that the State violated defendant's right to a speedy trial and dismissed the charges. The State appealed.

## II. Speedy-Trial Analysis

¶ 11.    The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The court and both parties correctly recognize that we evaluate speedy-trial claims under the four-factor balancing test set out in Barker v. Wingo, 407 U.S. at 530. See State v. Young, 2023 VT 10, ¶ 9, __ Vt. __, 292 A.3d 689 (applying test). These factors must be considered along with the relevant circumstances of the case, and no factor by itself is "necessary or sufficient to find a deprivation of the speedy trial right." State v. Lafaso, 2021 VT 4, ¶ 11, 214 Vt. 123, 251 A.3d 935.

¶ 12.    Because speedy trial claims involve both factual and legal determinations, we apply "a mixed standard of review." State v. Reynolds, 2014 VT 16, ¶ 9, 196 Vt. 113, 95 A.3d 973. "As the trial court is in the best position to determine the weight and sufficiency of the evidence, we use a clearly erroneous standard to review underlying facts found by the court." State v. Burke, 2012 VT 50, ¶ 14, 192 Vt. 99, 54 A.3d 500. However, the "ultimate legal question" of whether the trial court's findings and the underlying facts demonstrate a violation of the right to a speedy trial is reviewed de novo. State v. Brillon, 2008 VT 35, ¶ 14, 183 Vt. 475, 955 A.2d 1108, rev'd on other grounds by Vermont v. Brillon, 556 U.S. 81 (2009).

## A.  Length of Delay

¶ 13.    The first factor, the length of delay, is "actually a double enquiry." Doggett, 505 U.S. at 651. Defendants must first show that the "interval between accusation and trial has crossed

the threshold dividing ordinary from presumptively prejudicial delay." Id. at 651-52 (quotation omitted). If this showing is made, then courts must consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 652. The permissible length of delay is necessarily dependent on the circumstances of the case and cannot as a constitutional matter "be quantified into a specified number of days or months." Barker, 407 U.S. at 523.

¶ 14. The trial court here found that the nineteen-year delay since arraignment was "extraordinary, even egregious" and warranted a full review of the Barker factors. The court noted that courts have found significantly shorter delays to meet this threshold. This Court has previously found delays of less than two years to be sufficient to trigger the four-factor Barker test. See, e.g., Reynolds, 2014 VT 16, ¶ 19 (twenty-three months); State v. Keith, 160 Vt. 257, 267, 628 A.2d 1247, 1253 (1993) (twenty months). Federal courts have similarly found delays of more than one year to be presumptively prejudicial in most cases. See Doggett, 505 U.S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay presumptively prejudicial at least as it approaches one year." (quotation omitted)); see, e.g., United States v. Bass, 460 F.3d 830, 836 (6th Cir. 2006) (thirteen months); United States v. Murillo, 288 F.3d 1126, 1132 (9th Cir. 2002) (thirteen months). Thus, the court found defendant had shown presumptively prejudicial delay.

¶ 15. Opposing this finding, the State argues that because criminal charges against an incompetent defendant cannot be prosecuted under Vermont law, the time that elapses during periods of incompetency must also be excluded from the speedy-trial analysis because the defendant does not understand the crime with which he is charged and cannot help his counsel. See 13 V.S.A. § 4817(b) ("A person shall not be tried for a criminal offense if the person is found incompetent to stand trial by a preponderance of the evidence."). The State also notes that our

6

cases require the exclusion of the time to determine competency and argues we should exclude time that elapses after a defendant has been adjudicated incompetent. See Young, 2023 VT 10, ¶ 11 ("[T]he time elapsed to determine competency . . . [is] not counted in the total delay."). The State also cites case law from other states and the federal courts to suggest that periods of incompetency must be excluded from the speedy-trial analysis. Finally, the State criticizes the trial court for comparing the length of delay here to cases involving a competent defendant and offers several cases from other jurisdictions where courts have denied speedy-trial claims with comparable delays caused by the defendant's incompetency.

¶ 16.    While we disagree with the trial court's ultimate conclusion, we agree that the delay here crossed the threshold from ordinary to "presumptively prejudicial," necessitating a full examination of the Barker factors. The State correctly notes that our cases require us to exclude "the time elapsed to determine competency" from the threshold Barker analysis. Young, 2023 VT 10, ¶ 11. But we decline to take the additional step of excluding the resulting periods of incompetency, once determined, because doing so would require us to ignore potentially meritorious speedy-trial claims. As the Pennsylvania Supreme Court recognized in Commonwealth v. McQuaid, several courts "have suggested that a sufficient showing of delay and prejudice could create a valid speedy trial claim by one incompetent to stand trial." 347 A.2d 465, 476 (Pa. 1975); see United States ex rel. Daniels v. Johnston, 328 F. Supp. 100, 110 (S.D.N.Y. 1971) ("It may be that a period of commitment for incompetency might be so extended that to try a defendant at its conclusion would be constitutionally impermissible."); United States ex rel. Little v. Twomey, 477 F.2d 767, 770 (7th Cir. 1973) (finding that incarceration for a "reasonable period of time" due to incompetency would negate speedy-trial claims, but noting that in some circumstances, an incompetent defendant could be "held more than the reasonable period of time" (quotations omitted)). If we held that periods of incompetency are excluded from the threshold

7

Barker analysis, we could dismiss some valid claims, depriving individuals of their constitutional rights. Imagine, for example, a defendant who was adjudicated incompetent more than forty years ago, who has repeatedly asserted the right to a speedy trial, and whose defense has been severely prejudiced by the deaths of all favorable witnesses. The State's proposal would require us to deny a speedy-trial claim at the outset without the ability to analyze the other Barker factors. The better approach is to allow consideration of periods of incompetency at the outset to permit full analysis of the four Barker factors where otherwise appropriate.

¶ 17. None of the State's cases compel a different result. This Court's precedents hold only that periods of assessing competency are to be excluded, not resulting periods of incompetency. See Young, 2023 VT 10, ¶ 11; State v. Boyajian, 2022 VT 13, ¶ 23, 216 Vt. 288, 278 A.3d 994; State v. Trombley, 148 Vt. 293, 299, 532 A.2d 963, 967 (1987); State v. Messier, 146 Vt. 145, 162, 499 A.2d 32, 44 (1985); State v. Williams, 143 Vt. 396, 401, 467 A.2d 667, 669 (1983); State v. Bristol, 143 Vt. 245, 248-49, 465 A.2d 278, 280 (1983). Excluding periods of assessing competency makes sense because we do not want to incentivize frivolous claims of incompetency as a tactic to support speedy-trial claims. But once a person has been adjudicated incompetent, these concerns no longer apply.

¶ 18. The recent federal cases cited by the State are also inapposite to this question because they apply the federal Speedy Trial Act, 18 U.S.C. § 3161(h)(4). See United States v. Romero, 833 F.3d 1151, 1154-55 (9th Cir. 2016). The federal statute does not apply to Vermont prosecutions, and Vermont has no similar statute. Several of the cited cases from other states are also dependent on state statutes that have no application. State v. Starcevich, 678 P.2d 959, 969 (Ariz. Ct. App. 1983); Lowe v. State, 438 So. 2d 1072, 1073 (Fla. Dist. Ct. App. 1983); State v. Mendoza, 1989-NMCA-032, ¶ 3, 774 P.2d 440; State v. Cox, 24 P.3d 1088, 1090 (Wash. Ct. App. 2001). The remaining state cases mostly support our conclusion that the initial Barker factor has

been met. See Langworthy v. State, 416 A.2d 1287, 1288 (Md. Ct. Spec. App. 1980) (finding that 33 month delay "is enough to trigger a speedy-trial analysis under the four factors set out in Barker v. Wingo"); State v. Woodland, 945 P.2d 665, 670 (Utah 1997) (concluding that delay of thirty-seven months was sufficient to trigger four-factor analysis); In re Snyder, 422 P.3d 1152, 1155 (Kan. 2018) (assuming that other factors weighed in defendant's favor, but denying claim due to reason for delay). But see Commonwealth v. Bruno, 255 A.2d 519, 522 (Pa. 1969) (concluding in pre-Barker case without discussion of threshold factor that "the federal constitutional guarantee of a speedy criminal trial does not require that an incompetent accused be tried").

¶ 19.    Finally, while the State is correct that cases involving incompetency would be more appropriate comparisons to this case, none of the cited cases persuade us that we should exclude periods of incompetency from the initial inquiry.[2]  Instead, we follow the numerous other cases that have found the threshold factor to be met even where the delay was the result of incompetency. See, e.g., United States v. Smalls, 438 F.2d 711, 713 (2d Cir. 1971) (finding in case involving incompetent defendant that a delay of over five years "is surely long enough to call for an explanation from the government"); Twomey, 477 F.2d at 770 (finding four-year delay to be "presumptively prejudicial" even where reason for delay was defendant's incompetence); Danks v. State, 733 N.E.2d 474, 482 (Ind. Ct. App. 2000) (concluding that six-and-a-half year delay was

---

[2] Most of the cited cases were decided before Barker and do not recognize length of delay as a triggering mechanism.  See People v. Von Wolfersdorf, 323 N.Y.S.2d 88, 91-92 (Co. Ct. 1971); State v. Dehler, 102 N.W.2d 696, 704-05 (Minn. 1960); Watts v. Supreme Court, 318 N.Y.S.2d 840, 842-43 (App. Div. 1971); United States v. Mills, 434 F.2d 266, 271-72; see also State v. Johnson, 579 S.W.2d 771, 773-76 (Mo. App. 1979) (post-Barker, but premised on finding that Barker does not apply).  The remaining cases cut against the State's argument, suggesting that a more fulsome inquiry beyond the threshold factor is necessary.  See Commonwealth v. McQuaid, 347 A.2d 465, 476 (Pa. 1975) (recognizing that incompetent defendants could in certain circumstances have valid speedy trial claims); State v. Bias, 352 S.E.2d 52, 63 (W. Va. 1986) (requiring government to show that defendant suffered no substantial prejudice from delay due to incompetency).  Thus, these cases do not persuade us that periods of incompetency should be excluded from the threshold inquiry.

9

"sufficiently long so that inquiry into the Barker factors is required" even where five of those years were attributed to defendant's incompetency).

¶ 20. Our cases require that we exclude "[d]elays attributable to proceedings necessary to determine competency to stand trial and pretrial motions." State v. Messier, 146 Vt. 145, 162, 499 A.2d 32, 44 (1985). We need not analyze with specificity precisely which periods this would exclude here. All pre-trial motions here were completed by the time of the jury draw in May 2007 and competency proceedings were completed by April 2008. This leaves more than fifteen years since defendant was first found incompetent. Even if we were to exclude all proceedings related to the commitment order and all proceedings related to defendant's motions to dismiss, this still leaves more than ten years of inactivity in this case.[3] As discussed, numerous courts have found the threshold factor to be met with far shorter periods of delay, even in cases involving incompetent defendants. We therefore conclude that the threshold Barker requirement of presumptively prejudicial delay was met here and that a more searching inquiry of the Barker factors is necessary.

B. Reason for Delay

¶ 21. Having found the length of delay to be presumptively prejudicial, we now consider the remaining factors, starting with the reason for the delay. Courts assign different weights to the varied reasons for delay, with deliberate attempts to delay weighing heavily against the State, and "more neutral" reasons such as negligence or overcrowding weighing less heavily. Barker, 407 U.S. at 531. Certain reasons, such as "delays due to missing witnesses and ordinary trial preparation" are valid and neutral reasons for delay. Young, 2023 VT 10, ¶ 12. Delays caused by the defendant or defense counsel are attributed to the defendant. Brillon, 556 U.S. at 90-91.

---

[3] The first period of inactivity lasted from April 5, 2011 to June 4, 2014, and the second from February 20, 2015 to November 1, 2021—a total of 3602 days, or 9.87 years. Adding the period of delay since July 2022 resulting from DMH delays in assessing competency, the delay here exceeds ten years even if we exclude every other period.

10

¶ 22.    The trial court described eight distinct periods in this case: (1) trial preparation, from February 2004 to May 2007; (2) competency hearings, from May 2007 to April 2008; (3) commitment hearings and appeal, from April 2008 to April 2011; (4) the first period of inactivity, from April 2011 to July 2014; (5) proceedings based on the court's request for briefing and the first defense motion to dismiss, from July 2014 to February 2015; (6) the second period of inactivity, from February 2015 to November 2021; (7) proceedings on the second defense motion to dismiss, from November 2021 to July 2022; and (8) proceedings on the State's motion for a competency evaluation by a psychiatrist, from July 2022 to present.  The court found that the first three periods were all reasonable and treated them as neutral under this factor.  However, the court found that the fourth and sixth periods of time were directly attributable to the State's negligence in not seeking a renewed evaluation, and that the eighth period was attributable to the State since delays were caused by processing issues at DMH.  The court found that at least ten years of the delay were attributable to the State, and that this factor therefore weighed heavily in favor of defendant.

¶ 23.    Reviewing the case law, we conclude that the trial court erred in attributing the periods of defendant's incompetency to the State under this factor.  Federal courts are nearly unanimous in holding that periods of incompetency are not attributable to the government.[4]

_____

    [4] See, e.g., Smalls, 438 F.2d at 713 (concluding delay in bringing case was "at least in part justified" where defendant was undergoing treatment for "the last three of the five-and-a-half-year delay period"); United States v. Abou-Kassem, 78 F.3d 161, 167 (5th Cir. 1996) (holding that "hospitalization of a mentally ill prisoner sufficiently supports" delay of seven years between conviction and sentencing); United States v. Davis, 365 F.2d 251, 255 (6th Cir. 1966) (concluding no speedy trial violation where defendant was incarcerated in a mental institution); Danks v. Davis, 355 F.3d 1005, 1009 (7th Cir. 2004) (concluding that defendant "cannot establish that his period of incompetency is attributable to the state" where record shows the court received regular reports of defendant's status); Twomey, 477 F.2d at 770 ("The incarceration for a reasonable period of time because of established incompetency to stand trial would thus appear to be a sufficient answer to any speedy trial claim."); Mills, 434 F.2d at 271 ("[D]elays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe upon his Sixth Amendment right to a speedy trial."); Johnston, 328 F. Supp. at 110 ("A delay in

Numerous state courts have reached the same conclusion.[5] And learned treatises on the subject uniformly state that periods of incompetency are to be excluded.[6] The logic behind these decisions is sound: if the State is constitutionally forbidden from bringing a case to trial while a defendant is incompetent, it cannot be faulted for not doing so. We agree with the vast majority of other courts to consider this issue and conclude that periods of incompetency are not attributable to the State for purposes of the second Barker factor.

¶ 24.    Despite the near uniformity of the case law, the court relied on a single case in which the Court of Appeals for the Ninth Circuit found that the government had a duty to request periodic reports on the incompetent defendant's condition and concluded that its failure to make "an effort to determine when, if ever, [the defendant] would become competent" necessitated dismissal of the case. United States v. Geelan, 520 F.2d 585, 589 (9th Cir. 1975). In this case, the court suggested that the State's purported obligation arose at three specific times: (1) completion

trial occasioned by mental incompetence of a defendant does not deprive the defendant of his Sixth Amendment right to a speedy trial.").

    [5]    See, e.g., Snyder, 422 P.3d at 1156 (finding where defendant remained legally incompetent to stand trial at time of motion to dismiss, "the long delay caused by [defendant's] incompetency cannot be attributed to the State"); McQuaid, 347 A.2d at 475 ("Normally, any delay of trial caused by the incompetency of the defendant is justified because it is necessary for the protection of the defendant's right to a fair trial."); Woodland, 945 P.2d at 670 ("That delays caused by questions of competency do not impinge on an accused's right to a speedy trial is well established."); State v. Crandle, 368 So. 3d 934, 942-43 (Ala. Crim. App. 2021) (concluding that period of delay resulting from defendant's incompetency "was justified and should not weigh against the State"); Langworthy, 416 A.2d at 1293 ("[O]nce an accused has been determined to be incompetent, the deferral of his trial pending a return to competency does not offend any right to a speedy trial under the Sixth Amendment.").

    [6]    See, e.g., 5 W. LaFave et al., Criminal Procedure § 18.2(c) (4th ed. 2022) ("Courts have recognized several other situations which fall within the 'valid reason' category, such as incompetency of the defendant."); 3 J. Cook, Constitutional Rights of the Accused § 17:3 (3d ed. 2021) ("Any delay occasioned by the physical incapacity or mental incompetence of the accused, or a mental examination, will not be considered unreasonable delay for speedy trial purposes.").

of defendant's appeal of the commitment order; (2) defendant's first motion to dismiss in 2014; and (3) defendant's second motion to dismiss in 2021.

¶ 25. Given the immense body of contrary case law discussed above, we disagree with Geelan even absent any distinctions from this case.

¶ 26. Vermont law does not impose any affirmative obligations on prosecutors to reevaluate an incompetent defendant. Instead, our cases have long suggested that a reevaluation of an incompetent defendant should only occur based on a showing of "changed circumstances." State v. Lockwood, 160 Vt. 547, 554-55, 632 A.2d 655, 660 (1993); State v. Beaudoin, 2008 VT 133, ¶¶ 16-17, 185 Vt. 164, 970 A.2d 39. This was made explicit in the 2023 revisions to 13 V.S.A. § 4814, which now states that "[a]fter an initial competency determination, a court may order subsequent evaluations of a defendant to be performed by the Department of Mental Health only upon a showing of changed circumstances." 13 V.S.A. § 4814(e). Although the statute does not define changed circumstances, the context makes clear that these circumstances must relate to a defendant's competency since other changes would not be relevant to the question of whether to reevaluate competency. Therefore, under the modified statute and our precedents, a second competency determination may only occur based on some showing of a change related to a defendant's competency. See Lockwood, 160 Vt. at 555, 632 A.2d at 660 (requiring defendant to make showing of changed circumstances beyond "defense counsel's feeling about it").

¶ 27. If a new competency evaluation may only be ordered based on a showing that there has been some change related to defendant's competency, then it follows that the State could only be obligated to request a new evaluation where it has some indication that circumstances have changed. However, this cannot occur because Vermont law makes information about an incompetent defendant's treatment confidential and does not authorize disclosure to the prosecutor. 18 V.S.A. § 7103(a). The only information about an incompetent defendant that the

13

State is entitled to receive is a mandatory disclosure ten days prior to discharge of a defendant from DAIL or DMH custody. 13 V.S.A. §§ 4822(c), 4823(c).

¶ 28. Absent any indication of a change in circumstances, we conclude that the State did not err in failing to reevaluate defendant's competency. None of the three events that the trial court identified as triggering a duty to reevaluate defendant's competency involved any indication of changed circumstances. The motions to dismiss here did not identify any changed circumstances. In fact, defendant specifically argued in the 2014 motion to dismiss that circumstances had not changed, stating that there was no evidence that he was "not still currently and indefinitely incompetent." And motions to dismiss do not as a general matter indicate that an incompetent defendant's circumstances have changed. In addition, if a motion to dismiss could trigger a duty to reevaluate, then this would further burden DMH, which already has insufficient resources to timely conduct evaluations as evidenced by the facts in this case. Further, the completion of commitment proceedings has little bearing on whether a defendant's circumstances have changed. The question in a commitment hearing is whether a defendant presents a danger of harm to others and is in need of custody, care, and habilitation. See In re M.A., 2011 VT 9, ¶ 1; 13 V.S.A. § 4823(a). A positive finding on this question generally has no bearing on competency, and certainly does not indicate a need to reevaluate competency. Here, nothing in the pleadings or record reveals any specific reason that would trigger a duty to reevaluate competency. The trial court's conclusion that the State had a duty to reevaluate defendant on three occasions is unsupported.

¶ 29. Our conclusion does not leave the initial determination of incompetency to control indefinitely. Title 18, § 8845 establishes mandatory annual judicial review of the commitment order and empowers the family court to discharge a defendant based on a finding that "the person is no longer in need of custody, care, and habilitation." One reason that DAIL might recommend

release and that the court might discharge a defendant "is that the defendant has regained competency." State v. B.C., 2016 VT 66, ¶ 18, 202 Vt. 285, 149 A.3d 143. Thus, if a defendant's treating physicians find that the defendant has regained competency, they could order the defendant's discharge and notify the State pursuant to 13 V.S.A. § 4823(c). Requiring the State to reevaluate a defendant's competency under such circumstances might make sense since discharge is indicative of a change in circumstances. See id. But, requiring the State to seek a reevaluation of competency absent an indication of changed circumstances would impose an obligation that is incompatible with the statutory scheme.[7] Absent changed circumstances, we are left with the Legislature's baseline command that "[a] person shall not be tried for a criminal offense if the person is found incompetent to stand trial." 13 V.S.A. § 4817(b).

¶ 30. From the above discussion, we conclude that the second factor, the reason for the delay, heavily favors the State. The vast majority of cases from other courts have concluded that periods of incompetency are not attributable to the State under this factor. We agree with these cases that the State cannot be faulted for failing to move the case forward to trial while defendant was constitutionally protected from prosecution. We disagree with the trial court's conclusion that the State violated a duty to reevaluate defendant's competency. We conclude that Vermont law imposes no obligation to reevaluate an incompetent defendant absent an indication of changed circumstances and that nothing in the record shows that the State received any such indication. We therefore conclude that the delay was attributable to defendant's incompetency and does not support defendant's speedy-trial claim.

---

[7] It may be that the solution to this problem would be for the Legislature to provide prosecutors with greater access to treatment information for incompetent defendants. See Robert R. Rigg, Patient One: An Exploration of Criminal Justice and Mental Health, 16 Ind. Health L. Rev. 67, 89-90 (2018) (suggesting that greater links between the criminal court system and the mental health court system could resolve some of these tensions). But this is an issue for the Legislature to consider and we must restrict our analysis to current statutes.

## C. Assertions of Right to Speedy Trial

¶ 31. The third factor in the Barker analysis is "whether and how a defendant asserts his right" to a speedy trial. Barker, 407 U.S. at 531. The U.S. Supreme court in Barker noted that assertion of the right to a speedy trial "is entitled to strong evidentiary weight," and emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. at 531-32. This Court considers various factors in weighing a defendant's assertion of the right, including "defendant's knowing failure to object to delays, acquiescence in long delays, failure to object to motions to continue, and the frequency and force of the accused's speedy-trial objections." Young, 2023 VT 10, ¶ 18 (quotations omitted).

¶ 32. In its ruling, the trial court found that defendant had sufficiently asserted his speedy trial right by filing motions to dismiss in 2014, 2021, and 2022. The court noted that each of these motions "were in part based on his right to a speedy trial." The court also excused defendant from not more vigorously asserting his right to a speedy trial since he "did not have consistent counsel throughout the entire case, and [] he has been held incompetent to stand trial."

¶ 33. As a preliminary matter, we reject the State's argument that because defendant has not directly demanded a speedy trial, this factor should weigh wholly against him. The State cites this Court's decision in State v. Unwin where we said that "[a] motion to dismiss based on an alleged violation of the right to a speedy trial is not the equivalent of a demand for an immediate trial." 139 Vt. 186, 196, 424 A.2d 251, 257 (1980). The State argues that because defendant has only sought dismissal on speedy-trial grounds rather than demanding a speedy trial, the court's finding that he made "an overt assertion of his speedy trial rights" is reversible error. However, the State's argument on this issue closely mirrors one we rejected in State v. Lafaso, 2021 VT 4, ¶ 28, 214 Vt. 123, 251 A.3d 935. There, we noted that the quoted language in Unwin was merely meant to suggest that a motion for an immediate trial "is a stronger assertion of the right" than a

16

motion to dismiss, not that "failure to move for an immediate trial constitutes a per se failure to assert the speedy trial right." Id. Thus, while defendant's motions to dismiss are weaker assertions than a demand for trial, the fact that defendant has not demanded a speedy trial does not render the trial court's findings reversible error.

¶ 34. The court did, however, err in finding that the 2014 and 2021 motions to dismiss were based on the right to a speedy trial and therefore supported a finding that defendant had asserted his rights. The record shows that neither motion contained any assertion of the right to a speedy trial. The transcript of the November 17, 2014, motion to dismiss hearing shows that the motion was filed by newly appointed counsel and relied entirely "on the language of Rule 48," without "cit[ing] or quot[ing] any specific law." Given the circumstances, the court allowed defense counsel to file a supplemental memo, but he failed to do so, and the court ultimately denied the motion to dismiss. Similarly, the 2021 motion to dismiss failed to mention defendant's right to a speedy trial, seeking dismissal only under the Americans with Disabilities Act, Jackson v. Indiana, and Rule 48(b)(2). Because neither of these earlier motions mentioned the right to a speedy trial, the trial court's finding that the earlier motions constituted assertions of the right was unsupported.

¶ 35. We are left with a single assertion of the right. This would, at first blush, suggest that this factor should weigh heavily against defendant. Other than the 2022 motion, defendant acquiesced in the protracted delays in this case and made no effort to secure a speedy trial. The 2022 motion came only after defendant had been reevaluated by a psychologist and found competent to stand trial. In other words, only with the renewed threat of a criminal trial did defendant seek to assert the right to a speedy trial. And he did so in a motion to dismiss rather than a request for a speedy trial. As the U.S. Supreme Court stated in Barker, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this

17

constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." Barker, 407 U.S. at 536. Defendant here faces a possible sentence of life imprisonment, a court has already found by clear and convincing evidence that he committed the charged offense, and he made only a single assertion of the right to a speedy trial in nearly twenty years. These circumstances strongly suggest that defendant did not want a speedy trial and that this factor should therefore weigh against him.

¶ 36. Nonetheless, the trial court correctly found that defendant's failure to more aggressively assert his speedy-trial rights is mitigated by his lack of counsel and the finding of incompetence. Defendant was without counsel from November 2012 until approximately June 2014, and again from approximately February 2015 until November 2021. Because defendant was unrepresented for much of the relevant time period, the failure to assert his speedy trial rights can be excused. See State v. Worden, 496 N.E.2d 245, 248 (Ohio Ct. Com. Pl. 1985) ("[A] defendant, who is unrepresented by counsel and does not know his right, may be excused from having to assert it."); United States v. Dyson, 469 F.2d 735, 740-41 (5th Cir. 1972) ("While it is true that [defendant] never demanded a trial it is not clear that he was aware of his right to do so since counsel was not appointed to represent him until . . . four days before trial."). Additionally, the fact that defendant was adjudicated incompetent further excuses his failure to assert the right. See United States v. Neighbors, 22 F. Supp. 3d 1158, 1166 (D. Kan. 2014) (noting that defendant was "mentally incompetent" for much of period of delay and concluding that "[h]is failure to object during this time period should not be held against him").

¶ 37. On this record, we conclude that this factor weighs in favor of the State, though only slightly. As discussed, defendant's failure to assert the speedy-trial right can be excused during the periods that he was incompetent and unrepresented. However, this still leaves significant periods during which defendant acquiesced in the delays and made no effort to secure

18

a speedy trial. Defendant was represented by counsel from the time of his arraignment in February 2004 until his attorney's death in November 2012. He was represented again from June 2014 to February 2015. His current counsel entered a notice of appearance and filed a motion to dismiss in November 2021, but did not demand a speedy trial until August 2022. While we do not place heavy emphasis on this factor given the mitigating facts in defendant's favor, we cannot ignore the fact that defendant never asserted his speedy trial right prior to the motion to dismiss granted by the trial court.

### D. Substantive Prejudice to Defendant

¶ 38.    The final <u>Barker</u> factor is prejudice to the defendant. This factor is assessed in light of the three primary interests protected by the right to a speedy trial: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. <u>Barker</u>, 407 U.S. at 532. Impairment to the defense is considered the most important of these factors because it "skews the fairness of the entire system." <u>Id</u>. While a showing of actual prejudice to the defense would obviously support a defendant's claim, a defendant need not provide "affirmative proof of particularized prejudice' in every case. <u>Doggett</u>, 505 U.S. at 655. Instead, because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove," parties can in certain circumstances rely on presumptive prejudice, the importance of which "increases with the length of delay." <u>Id</u>. at 655-56. To distinguish this term from <u>Barker</u>'s threshold requirement of "presumptively prejudicial" delay, we have at times referred to this factor as "substantive prejudice." <u>State v. Labrecque</u>, 2023 VT 36, ¶ 36, __ Vt. __, __ A.3d __. Thus, a defendant can demonstrate substantive prejudice through a showing of either actual or presumptive prejudice.

¶ 39.    The trial court here found that defendant suffered "anxiety and significant distress" resulting from the pending charges and that the defense was impaired due to "the death of the

defendant's first extremely effective trial counsel." The court also found that defendant suffered presumptive prejudice given the nineteen-year delay since arraignment and the more than ten-year period since denial of defendant's appeal of his commitment order. It concluded that the State had not rebutted the finding of presumptive prejudice. Therefore, it found that this factor weighed in defendant's favor.

¶ 40. We reject the trial court's conclusion that defendant suffered significant actual prejudice and conclude that there was only a minimal showing of actual prejudice here. First, defendant was only incarcerated for two weeks after his arrest, and the subsequent civil commitment is separate from the criminal case, so defendant has not suffered prejudice from pretrial incarceration. Second, while defendant may have suffered some anxiety and distress based on the pending charges, he has made little showing "beyond generalized assertions shared by any accused." Labrecque, 2023 VT 36, ¶ 37 (concluding such "generalized assertions . . . were insufficient to demonstrate actual prejudice"); see United States v. Simmons, 536 F.2d 827, 831-32 (9th Cir. 1976) (holding "[c]onclusory allegations" of anxiety and concern constitute only "minimal prejudice" absent a more specific showing). Third, the trial court's only concrete finding of actual prejudice—that defendant's attorney passed away in 2012—did not clearly impair his defense. Neither defendant nor the trial court cited any cases where a court has found that the death of an attorney constitutes prejudice. Barker suggests that prejudice is "obvious" where a witness dies or disappears during a delay. 407 U.S. at 532. But the death of an attorney is distinct from the death of a witness in that an attorney's value to the case can be equally replaced by a different attorney if given sufficient time. This case does not present a situation where the attorney's death came at an inopportune moment that immediately impaired the defense or made appointment of new counsel impracticable. Counsel here passed away in 2012, after defendant's appeal was rejected and at a time of inactivity in the case. More than ten years have passed since

20

counsel's death, allowing ample time for a new attorney to become familiar with the case and to adequately prepare a defense. Thus, even assuming that the death of an attorney could constitute actual prejudice, these circumstances indicate that the actual prejudice has been minimal. Therefore, we conclude that defendant has suffered minimal actual prejudice from the death of his attorney and from the anxiety and concern associated with the prosecution.

¶ 41.     This leaves the trial court's finding of presumptive prejudice. In Doggett, the U.S. Supreme Court noted that if the government had acted with "reasonable diligence," the defendant's speedy trial claim would have failed. 505 U.S. at 656. The court then suggested that this conclusion "would generally follow as a matter of course however great the delay," unless the defendant can show actual prejudice to the defense. Id. We made a similar observation in Young, 2023 VT 10, ¶ 24, and this Court has never "presumed substantive prejudice absent negligent or intentional delay." Labrecque, 2023 VT 36, ¶ 41.

¶ 42.     Because the State had no duty to seek reevaluation of defendant's competency, the record shows that the State pursued this prosecution with reasonable diligence. The law imposes no obligation on the State to reevaluate an incompetent defendant. Our cases and the newly enacted statute recognize that courts may order a new evaluation only based on changed circumstances. And the State received no indication of any changed circumstances regarding defendant's competency. Therefore, taking no action to reevaluate the defendant was not negligent. And there is no allegation of bad-faith delay by the State here. Absent a finding of either bad-faith delay or negligence, we must conclude that the State acted with reasonable diligence and that presumptive prejudice does not apply.[8] See Doggett, 505 U.S. at 656-57

_____

[8] Our finding that the length of delay was "presumptively prejudicial" has no bearing on this conclusion with respect to substantive prejudice. While the language used by the U.S. Supreme Court may create some confusion, the concepts of "presumptively prejudicial delay" and "presumptive prejudice" for purposes of the fourth Barker factor are distinct. See Doggett, 505 U.S. at 652 n.1 ("[A]s the term is used in this threshold context, 'presumptive prejudice' does not

21

("Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.").

¶ 43. We therefore conclude that this factor at most weighs slightly in defendant's favor. Defendant is not entitled to a presumption of prejudice because the State has not acted either negligently or intentionally in delaying the prosecution. Instead, the delay is attributable to defendant's incompetency, for which we do not fault the State. And defendant has made little showing of actual prejudice to his defense. He may have suffered some minimal prejudice from the mere fact of the pending charges, and the death of his attorney in 2012 may have had some impact on his defense. But absent more specific showings of prejudice by defendant, we at most conclude that defendant has suffered minimal actual prejudice.

### III. Conclusion

¶ 44. We turn finally to weighing the four Barker factors and conclude that defendant has not made out a sufficient showing of a speedy-trial violation. The length of delay here is significant. It has been more than nineteen years since defendant was first charged, and at least half of that time elapsed with no proceedings on this case. But the remaining factors, particularly the reason for delay, outweigh the length of delay. The reason for delay can be attributed almost entirely to defendant's incompetency, and given the Legislature's command in 13 V.S.A. § 4817(b) that incompetent defendants "shall not be tried," these periods are not attributable to the State. We note that many courts in similar circumstances have found that the reason for delay by itself was sufficient to reject a speedy-trial claim. See, e.g., Snyder, 422 P.3d at 1155 ("Assuming three factors—length of delay, assertion of the right, and prejudice to the defendant—weigh in [defendant's] favor, his speedy trial claim is still foreclosed by the sole reason for the delay—his

necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.").

incompetency to stand trial."); Woodland, 945 P.2d at 670 (referring to second factor as "often dispositive," and concluding that "[b]ecause time spent evaluating competency may not be considered in the speedy trial analysis, Woodland has suffered no prejudicial delay"); Langworthy, 416 A.2d at 1289 ("This entire case rises or falls upon our consideration of the single factor of reason for the delay or fault."). The remaining factors here do little to change the analysis. Defendant did not assert the right to a speedy trial prior to the instant motion to dismiss, but his failure to do so is mitigated by his circumstances. And while he may have suffered some prejudice, he has not made any specific showings of actual prejudice and is not entitled to a presumption of prejudice.

¶ 45.    Given that the main factor supporting defendant's claim—the length of delay—is adequately explained by the reason for delay, and the remaining factors do not provide significant support for defendant's claim, we conclude that defendant has not made a sufficient claim of denial of his right to a speedy trial. Accordingly, we reverse the trial court's dismissal of the charges against defendant, and remand for further proceedings.

Reversed and remanded.

FOR THE COURT:

_____
Chief Justice


¶ 46.    **WAPLES, J., dissenting.**    I agree with the majority that the delay here is presumptively prejudicial: for ten of the nearly twenty years since charges were filed against defendant, there was no activity whatsoever in this case. However, I disagree with the majority's conclusion that the entire period of delay is attributable solely to defendant's incompetency. The State had an obligation to bring this case to trial, and its failure to inquire about defendant's mental status despite the passage of many years since the initial incompetency finding weighs in favor of

23

defendant. I also disagree with the majority's conclusions that defendant did not assert his speedy-trial right until 2022 and that presumptive prejudice cannot be found in this case. In my view, the trial court correctly determined that these factors weigh in favor of defendant and entitle him to relief. I therefore respectfully dissent.

¶ 47. It is of course true that a person who is found incompetent cannot be tried for a criminal offense. 13 V.S.A. § 4817(b). For this reason, courts generally exclude periods of incompetency from the speedy-trial analysis. See, e.g., United States v. Mills, 434 F.2d 266, 271 (8th Cir. 1970) (stating that "delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe upon his Sixth Amendment right to a speedy trial"). However, as we have explained, each speedytrial claim must be assessed "in the specific context of the case at hand." State v. Lafaso, 2021 VT 4, ¶ 11, 214 Vt. 123, 251 A.3d 935. Attributing the decade-long delay in this case solely to defendant's initial finding of incompetency reflects a too-narrow view of the facts and excuses the State's failure to diligently prosecute this and other cases.

¶ 48. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. However, "[a] defendant has no duty to bring himself to trial; the State has that duty." Barker v. Wingo, 407 U.S. 514, 527 (1972). "[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." Id. While a "valid reason" such as incompetency may "serve to justify appropriate delay," the record supports the trial court's conclusion that the delay here stretched beyond what was appropriate. Id. at 531; see also United States ex rel. Little v. Twomey, 477 F.2d 767, 770 (7th Cir. 1973) (holding that reasonable delay caused by defendant's established incompetency did not violate speedy-trial right, but noting that "[a] different matter, and one not argued here, would be involved if [defendant] had been held more than the reasonable period of

24

time necessary to determine whether there was a substantial probability that he would attain capacity in the foreseeable future"). The State could properly rely on the initial finding of incompetency at the beginning of this case, but after months and years passed it was obliged, consistent with its constitutional obligations, to make some effort to determine whether defendant's status had changed. See United States v. Geelan, 520 F.2d 585, 588 (9th Cir. 1975) ("The Government has a duty to bring a defendant to trial as promptly as possible, and it may not justify a delay merely by citing the defendant's incompetence.").

¶ 49. The record indicates that at some point between the initial incompetency determination in April 2008 and the summer of 2022, defendant became competent to stand trial. But we don't know when this occurred because the State made no effort to inquire into defendant's mental state at any point during that time. In fact, after 2008 the State did absolutely nothing to move the case forward. The State took no action even after the trial court indicated in 2014 that a reevaluation was likely appropriate. The State's lack of diligence must weigh against the State, not defendant. This is especially so because defendant, who is indigent and disabled, lacked counsel for years at a time and neither the criminal division nor the State received reports of defendant's status during this period.

¶ 50. The majority argues that its position is supported by overwhelming authority, but almost none of the decisions it relies upon involve a delay as lengthy as the one in this case. The only one that compares is Commonwealth v. McQuaid, 347 A.2d 465, 476 (Pa. 1975), in which the defendant was confined in a mental institution for fifteen years following an initial incompetency determination. Notably, the McQuaid court acknowledged that such an extended delay could potentially form the basis of a speedy-trial claim, even though it was due to the defendant's adjudicated incompetency. Id. The court ultimately concluded that that the defendant was not entitled to relief because he had not made a strong showing of actual prejudice. Id.

25

However, McQuaid's reasoning regarding that factor is of limited persuasive value here because it was decided before Doggett v. United States, 505 U.S. 647, 655 (1992), in which the U.S. Supreme Court clarified that a showing of particularized prejudice was not necessarily required if other factors weighed strongly in the defendant's favor.

¶ 51.    In several of the other cases cited by the majority, the delays resulting from a finding of incompetency were relatively brief, and the defendant was tried promptly once the court received notice that the defendant had regained competency.  See United States v. Davis, 365 F.2d 251, 255 (6th Cir. 1966) (stating defendant was hospitalized for several months, following which hospital staff reported to court that he was competent); Langworthy v. State, 416 A.2d 1287, 1292 (Md. Ct. Spec. App. 1980) (stating defendant hospitalized for fourteen months after initial incompetency determination, and court held jury trial after hospital reported him to have regained competency); see also State v. Woodland, 945 P.2d 665, 669-70 (Utah 1997) (concluding that defendant's hospitalization after initial charges were dropped and before new charges were filed did not count for speedy-trial purposes).  The short delays in these cases are simply not comparable to the delay here.

¶ 52.    In the remaining cases cited by the majority, which involved longer delays, information about the defendants' competency was regularly shared with the court or sought by the prosecutor.  See Danks v. Davis, 355 F.3d 1005, 1009 (7th Cir. 2004) (declining to attribute delay of six-and-a-half-years of hospitalization following initial incompetency finding to state for speedy-trial purposes because court routinely received reports about defendant from hospital and reevaluated competency of defendant during that period); United States v. Abou-Kassem, 78 F.3d 161, 167 (5th Cir. 1996) (stating defendant, who was found incompetent after trial and before sentencing, was reevaluated twice and sentenced after hospital submitted certification that he had regained competency); Twomey, 477 F.2d at 769-70 (stating defendant hospitalized for three years

26

but reevaluated twice by court during that period); United States v. Smalls, 438 F.2d 711, 713 (2d Cir. 1971) (noting that during three-year period following incompetency determination, prosecutor regularly sent letters to hospital inquiring about defendant's status, and defendant was tried promptly upon release from hospital); United States v. Mills, 434 F.2d 266, 270 (8th Cir. 1970) (stating defendant hospitalized after initial incompetency finding for five-and-a-half years, during which court received regular reports and reevaluated defendant's competency three times); United States ex rel. Daniels v. Johnston, 328 F. Supp. 100, 101 (S.D.N.Y. 1971) (recounting defendant hospitalized for six years following initial determination of incompetency, and continued to be hospitalized after court reevaluated and found him still incompetent); State v. Crandle, 368 So. 3d 934, 942 (Ala. Crim. App. 2021) (stating court held hearings every six months to inquire about defendant's competency); In re Snyder, 422 P.3d 1152, 1155 (Kan. 2018) (stating defendant's competency reevaluated by court at least three times in four years following initial incompetency determination).

¶ 53. Here, in contrast, the delay was extremely long and neither the court nor the State sought or received updates regarding defendant's mental state during that time, making it impossible to determine with any accuracy if and when defendant became competent. After substantial time passed with no updates regarding defendant's status, the State "should have made an effort to determine when, if ever, [defendant] would become competent." Geelan, 520 F.2d at 589.

¶ 54. The majority excuses the State's lack of diligence, reasoning that a reevaluation of an incompetent defendant may only occur based on a showing of changed circumstances. Ante, ¶ 26. But our previous decisions, including State v. Lockwood, 160 Vt. 547, 632 A.2d 655 (1993), and State v. Beaudoin, 2008 VT 133, 185 Vt. 164, 970 A.2d 39, do not support this position. The issue before this Court in both of those appeals was whether the trial courts had erred in failing to

27

order a second competency evaluation of a defendant previously found to be competent. We held that the omission was not reversible error, particularly since there had been no suggestion to the trial court in either case that the defendant's condition had changed. Lockwood, 160 Vt. at 554-55, 632 A.2d at 660; Beaudoin, 2008 VT 133, ¶¶ 16-17. Neither decision suggested that changed circumstances were a prerequisite to a reevaluation of a person deemed incompetent. The law in effect during most of this case did not prohibit the court from ordering a new competency evaluation if the request was reasonable, as it would have been here. See State v. Gurung, 2020 VT 108, ¶ 30, 214 Vt. 17, 251 A.3d 572 (holding that Vermont Rule of Criminal Procedure 16.1(a)(1)(I) did not prohibit the State in criminal prosecution from seeking more than one reasonable mental examination). And, even if the 2023 amendment to 13 V.S.A. § 4814(e) now requires such a showing for the court to order a second or subsequent competency evaluation, there is a strong argument that the standard would have been met by the passage of many years and defendant's participation in treatment during that time, the purpose of which was to resolve the mental-health issues rendering him incompetent in the first place.

¶ 55. The majority suggests that its decision does not allow the initial incompetency finding to control indefinitely because DAIL could eventually recommend release from commitment to the family court based on defendant "regain[ing] competency." Ante, ¶ 29. But the facts of this case demonstrate the unintended consequences that will result from the majority's approach: although the psychologist who evaluated defendant in 2022 at the criminal division's behest found him competent to stand trial, there is no evidence that DAIL recommended that he be released from commitment. The continuation of the commitment order does not establish that defendant was incompetent to stand trial. See 18 V.S.A. § 8844 ("No determination that a person is in need of custody, care, and habilitation and no order authorizing commitment shall lead to a presumption of legal incompetence."). The commitment process is entirely separate from the

28

criminal competency determination and involves different considerations. One does not depend on the other, and the fact that defendant is in DAIL custody does not absolve the State of its responsibility to take reasonable steps to promptly resolve the case.

¶ 56.    The State has an obligation to bring a defendant to trial upon a defendant's request even if the defendant is in the custody of another entity. See Smith v. Hooey, 393 U.S. 374, 383 (1969). In my view, an extensive portion of the delay here—at least from 2014 forward—is attributable to the State's lack of diligence in seeking new information about defendant's competency to stand trial. This inaction weighs heavily against the State. See State v. Montoya, 2015-NMCA-056, ¶ 16, 348 P.3d 1057 (stating delays resulting from lack of diligence by state weigh more heavily than institutional delays inherent in criminal justice system); State v. MacGregor, 2013 MT 297, ¶ 33, 311 P.3d 428 (holding same).

¶ 57.    I also disagree with the majority's conclusion that the trial court erred in finding that defendant's 2014 and 2021 motions to dismiss were based on the right to a speedy trial. A clearly erroneous finding is one that has no support in the record. In re TruConnect Commc'ns, Inc., 2021 VT 70, ¶ 20, 215 Vt. 422, 263 A.3d 770. Here, the record shows that in July 2014, the trial court held a status conference at which it opined that due to defendant's indefinite commitment and the length of the case, the State had an obligation to seek an updated competency evaluation or dismiss the prosecution. It issued an order stating that because defendant was indefinitely committed under supervision, the court "must do something regarding the pendency of this case." The court ordered that "[a]bsent filing from [the] State demonstrating the viability of the prosecution of this case, the Court will dismiss this case within 90 days," and that defendant "may file a motion to dismiss in the interest of justice in the meantime [within] 45 days." In response, defendant's attorney filed a motion asking the court to dismiss the case, arguing that it had been six years since he was found incompetent and that even if he were found to be competent,

29

more than ten years had passed since the original allegations against him. He argued that there was a substantial risk that defense witnesses would be unavailable or their memories would have faded, and that physical evidence might be lost or destroyed. He also argued that his original attorney had died, and any new counsel would be forced to start the case anew without the benefit of prior counsel's knowledge. Although the motion did not use the words "speedy trial," it plainly sought dismissal based on the delays in the case and referred to considerations relevant to the Barker analysis.

¶ 58. Given the substance of the 2014 motion and the order that prompted it, the trial court's finding that it was an assertion of the speedy-trial right was not clearly erroneous. Similarly, the 2021 motion sought dismissal due to the passage of nearly two decades without resolution of the criminal charges, which in this context can reasonably be viewed as an assertion of the speedy-trial right. See Jackson v. Indiana, 406 U.S. 715, 740 (1972) (noting that "[d]ismissal of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, the Sixth-Fourteenth Amendment right to a speedy trial"). These assertions of the right, while not strong, weigh in favor of defendant, who was poor, disabled, and unrepresented by counsel during most of the relevant time. See Lafaso, 2021 VT 4, ¶ 29 (explaining that while one or more motions for immediate trial indicate aggressive assertion of speedy-trial right, "more feeble actions by a defendant, like a motion to dismiss on speedy trial grounds or objections to continuances, may also show that the defendant asserted the right").

¶ 59. As to the fourth and final Barker factor, if ever there was a case involving presumptive prejudice to the defense, this is it. Nearly twenty years have passed since defendant was charged. "[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655. "While such presumptive prejudice cannot alone carry a Sixth Amendment claim

30

without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." Id. at 655-56 (citation omitted). As I explain above, a significant portion of the delay is attributable to the State's failure to take reasonable steps to move this case forward. Defendant did not merely acquiesce to this delay: he filed three motions to dismiss the case due to the excessive delays. The State offered no evidence to rebut the presumption of prejudice here, and defendant pointed to the anxiety he has felt living under pending criminal charges, as well as the loss of his original attorney, as additional evidence of prejudice. See United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (concluding that defendant's concession that most of essential witnesses and documentary evidence were still available were insufficient to rebut presumption of prejudice arising from five-year delay attributable to government's negligence). Even without the latter, I think prejudice can be presumed here, and therefore would affirm the trial court's conclusion that defendant's speedy-trial right was violated. See Doggett, 505 U.S. at 658 (explaining that when government's negligence causes delay and "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief"); see also United States v. Battis, 589 F.3d 673, 683 (3d Cir. 2009) (presuming prejudice under fourth Barker factor "when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government"); United States v. Erenas-Luna, 560 F.3d 772, 780 (8th Cir. 2009) (holding that three-year delay between indictment and arraignment caused by serious government negligence supported presumption of prejudice under fourth Barker factor). I therefore respectfully dissent.

¶ 60. I am authorized to state that Judge Morrissey joins this dissent.

_____
Associate Justice

31